IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Gerald Colpitts, as Personal Representative of the Estate of Bernadette Muratore,<br><br>    Plaintiff,<br><br>vs.<br><br>NHC Healthcare Clinton, LLC and Charles Holder, individually and in his capacity as Administrator of NHC Healthcare Clinton, LLC,<br><br>    Defendants. | C/A No.: 6:20-04065-DCC<br><br>**ORDER AND OPINION** |

Plaintiff Gerald Colpitts, as Personal Representative of the Estate of Bernadette Muratore, brought this action in the Court of Common Pleas for Laurens County, South Carolina, on October 19, 2020. Plaintiff alleges that his mother, Bernadette Muratore ("Decedent"), died after contracting COVID-19 at Defendant NHC Healthcare Clinton, LLC's ("NHC Clinton") facility in Clinton, South Carolina. NHC Clinton removed the case to this court on November 23, 2020, asserting the grounds for removal summarized below:

- <u>28 U.S.C. § 1332 Jurisdiction</u>. NHC Clinton argues diversity jurisdiction exists even though Plaintiff is a resident of South Carolina and NHC Clinton is a limited liability company organized and existing pursuant to the laws of the State of South Carolina. Its sole member is NHC/OP, L.P., which is a limited partnership organized and existing pursuant to the laws of Delaware. The limited partners of NHC/OP, L.P. are NHC/Delaware, Inc. and National HealthCare Corporation. NHC/Delaware, Inc. is organized and existing pursuant to the laws of the state of Delaware with its corporate office and principal place of business in Tennessee. National HealthCare Corporation is organized and existing under the laws of Delaware with its corporate office and principal place of business in Tennessee. NHC Clinton also asserts the amount in controversy exceeds $75,000.

- <u>18 U.S.C. § 1331 Jurisdiction</u>. NHC Clinton asserts Plaintiff's state law claims are preempted by the Public Readiness and Emergency Preparedness

Act (the "PREP Act"), 42 U.S.C. §§ 247d-6d and 24d-6e, which allows the Secretary of Health and Human Services to declare the existence of a public health emergency and take action to lead the national response, and to grant civil immunity to individuals and companies participating in the national response. NHC Clinton argues the PREP Act provides the exclusive remedy for claims such as those asserted by Plaintiff, except for claims of "willful misconduct." Those types of claims must be heard in the district court for the District of Columbia, before a three-judge panel, and pleaded with particularity. NHC Clinton further submits Plaintiff's complaint presents an "embedded federal question" necessarily raised in the allegations. NHC Clinton asserts it was acting as a "covered person" in its use, administration, and distribution of "covered countermeasures," such that Plaintiff's claims necessarily invoke federal questions under the PREP Act.

- <u>28 U.S.C. § 1442(a)(1) Jurisdiction</u>. NHC Clinton contends it was acting under the direction, guidance, recommendation, and advice of the United States government and federal officers with respect to the PREP Act and its associated regulations and advisory opinions.

ECF No. 1, 6-13.

## I. FACTS

On March 13, 2020, the South Carolina Department of Health and Environmental Control ("DHEC") restricted nursing homes and community residential care facilities to end-of-life visitation because of the spread of COVID-19. Plaintiff alleges Decedent was admitted to the NHC Clinton facility on May 5, 2020, for short-term rehabilitation following quadruple bypass surgery. According to Plaintiff, the facility, contrary to DHEC's directions, continued to allow visitation in non-end-of-life situations, failed to adequately screen or test its staff for COVID-19, failed to adequately screen visitors for COVID-19 symptoms or potential exposure, and failed to adequately screen or test admitted patients/residents for COVID-19. Plaintiff further alleges NHC Clinton did not require staff to wear masks.

Plaintiff contends members of the staff at NHC Clinton's facility started contracting COVID-

19 in June 2020. Nevertheless, NHC Clinton continued to fail to adhere to public health guidelines, including the wearing of masks. On July 7, 2020, Decedent was informed she had been exposed to a nurse who was infected with COVID-19. Decedent was placed in quarantine, along with the entire wing of the facility. Decedent began experiencing shortness of breath and coughing on July 9, 2020. She was admitted to Prisma Health-Laurens on July 13, 2020. She died from COVID-19 on July 20, 2020.

## II.  PROCEDURAL HISTORY

Plaintiff filed an amended complaint as a matter of right on December 9, 2020. Plaintiff named as a Defendant Charles Holder ("Holder"), individually and in his capacity as Administrator of NHC Healthcare Clinton, LLC. ECF 4. Plaintiff asserts causes of action for general negligence, wrongful death, and survival (First Cause of Action); negligent hiring/training/supervision (Second Cause of Action); gross negligence (Third Cause of Action); and premises liability (Fourth Cause of Action). Plaintiff asserts none of his allegations implicates medical malpractice, and contends any allegations that could be construed as medical in nature involve allegations that do not require the expertise of a medical expert witness.

The amended complaint does not contain new substantive allegations against Holder. Rather, it states he is a citizen of South Carolina. Holder is mentioned specifically in the premises liability cause of action. The court will refer to NHC Clinton and Holder together as "Defendants."

On December 13, 2020, Defendants filed a motion to deny joinder, complaining Plaintiff had named Holder for the purpose of destroying diversity jurisdiction. The same day, Defendants filed

a motion to dismiss on the grounds of complete preemption under the PREP Act.[1] Plaintiff filed a response to Defendants' motion to deny joinder and a response in opposition to the renewed motion to dismiss on December 29, 2020. Defendants filed reply briefs on January 5, 2021 reiterating their positions on the motion to deny joinder and motion to dismiss. Defendants also filed a supplemental reply regarding complete preemption on January 11, 2021.

The case was reassigned from the undersigned to the Honorable Joseph Dawson, III on January 14, 2021. On February 1, 2021, Defendants filed a second supplemental reply to Plaintiff's response to Defendants' motion to dismiss. Plaintiff filed a surreply brief regarding the motion to dismiss on March 4, 2021. On July 1, 2021, Judge Dawson issued an order in which he denied Defendants' motion to dismiss. Judge Dawson determined, as have the vast majority of courts, the PREP Act does not completely preempt state law so as to provide a ground for removal.[2] *See, e.g.*

---

[1] NHC Clinton filed a motion to dismiss on November 24, 2020. The motion was denied as moot after Plaintiff filed the amended complaint,

[2] Section 247d-6d(b)(8) provides:

> (8) Preemption of State law
>
> During the effective period of a declaration under subsection (b), or at any time with respect to conduct undertaken in accordance with such declaration, no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that--
>
> (A) is different from, or is in conflict with, any requirement applicable under this section; and
>
> (B) relates to the design, development, clinical testing or investigation, formulation, manufacture, distribution, sale, donation, purchase, marketing, promotion, packaging, labeling, licensing, use, any other aspect of safety or efficacy, or the prescribing, dispensing, or administration by qualified persons of the covered countermeasure, or to any matter included in a requirement applicable to the covered countermeasure under this section or any other provision of this chapter, or under the Federal Food,

*Maglioli v. All. HC Holdings LLC*, 16 F.4th 393 (3d Cir. 2021); *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679 (9th Cir. 2022); *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580 (5th Cir. 2022); *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210 (7th Cir. 2022), and numerous district courts. In South Carolina, the same disposition was reached in *Mason v. Loris Rehab & Nursing Center, LLC*, C/A No. 4:21-01485-SAL, 2021 WL 7541157 (D.S.C. Dec. 16, 2021), and *Wright v. Encompass Health Rehabilitation Hospital of Columbia, Inc.*, Civil Action No. 3:20-02636-MGL, 2021 WL 1177440 (D.S.C. Mar. 29, 2021).

Judge Dawson also found Defendants' motion to deny joinder to be premature because such a motion can be raised only after jurisdiction attaches. *See* 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."). Judge Dawson then observed the removal documents also relied on federal officer jurisdiction as a ground for removal. Given his ruling on preemption, Judge Dawson directed the parties to file supplemental briefs regarding federal officer jurisdiction under 28 U.S.C. § 1442(a)(1). The supplemental briefs were filed on July 15, 2021.

The case was reassigned back to the undersigned on August 9, 2022. On January 25, 2023, the court entered a text order directing the parties to submit a joint status report within thirty days. On February 23, 2023, the parties filed a joint status report indicating little action has taken place in this case. It appears some communications have occurred with respect to settlement and Defendants right to seek enforcement of an agreement to arbitrate and waive trial signed by Decedent's daughter.

---

Drug, and Cosmetic Act.

5

No scheduling order has been issued. Defendants have been granted an extension to file a responsive pleading until fourteen days from the date the court issues a ruling on federal officer jurisdiction. Defendants indicate they likely will refile the motion to deny joinder should the court deny federal officer jurisdiction.

### III. FEDERAL OFFICER JURISDICTION

Title 28, United States Code, Section 1442, Federal officers or agencies sued or prosecuted, provides:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
>    (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.
>
>    (2) A property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States.
>
>    (3) Any officer of the courts of the United States, for or relating to any act under color of office or in the performance of his duties;
>
>    (4) Any officer of either House of Congress, for or relating to any act in the discharge of his official duty under an order of such House.
>
> (b) A personal action commenced in any State court by an alien against any citizen of a State who is, or at the time the alleged action accrued was, a civil officer of the United States and is a nonresident of such State, wherein jurisdiction is obtained by the State court by personal service of process, may be removed by the defendant to the district court of the United States for the district and division in which the defendant was served with process.
>
> (c) Solely for purposes of determining the propriety of removal under subsection (a), a law enforcement officer, who is the defendant in a criminal prosecution, shall be

deemed to have been acting under the color of his office if the officer--

   (1) protected an individual in the presence of the officer from a crime of violence;

   (2) provided immediate assistance to an individual who suffered, or who was threatened with, bodily harm; or

   (3) prevented the escape of any individual who the officer reasonably believed to have committed, or was about to commit, in the presence of the officer, a crime of violence that resulted in, or was likely to result in, death or serious bodily injury.

(d) In this section, the following definitions apply:

   (1) The terms "civil action" and "criminal prosecution" include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued. If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court.

   (2) The term "crime of violence" has the meaning given that term in section 16 of title 18.

   (3) The term "law enforcement officer" means any employee described in subparagraph (A), (B), or (C) of section 8401(17) of title 5 and any special agent in the Diplomatic Security Service of the Department of State.

   (4) The term "serious bodily injury" has the meaning given that term in section 1365 of title 18.

   (5) The term "State" includes the District of Columbia, United States territories and insular possessions, and Indian country (as defined in section 1151 of title 18).

   (6) The term "State court" includes the Superior Court of the District of Columbia, a court of a United States territory or insular possession, and a tribal court.

For a court to have federal question jurisdiction over a case, "a right or immunity created by the Constitution or laws of the United States must be an . . . essential element of the plaintiff's cause of action." *Kelley v. S.C. Military Dep't*, Civil Action No. 3:22-2214-MGL, 2022 WL 16967718, at *1 (D.S.C. Nov. 16, 2022) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936)). The

"well-pleaded complaint rule" requires the exercise of federal jurisdiction based upon 28 U.S.C. § 1331 when a federal question is presented on the face of the plaintiff's well-pleaded complaint. *Id.* at * 2 (citing *Harless v. CSX Hotels, Inc.*, 389 F.3d 444, 450 (4th Cir. 2004)). The plaintiff is the master of the complaint and may avoid federal jurisdiction by exclusively relying upon state law. *Id.* (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)). "'Suits against federal officers are exceptional in this regard. Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law.'" *Id.* (quoting *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999)). A defendant seeking to remove a case under Section 1442 must establish "'(1) the defendant is a federal officer . . . ; (2) a colorable federal defense; and (3) the suit is for an act under color of office, which requires a causal nexus between the [plaintiff's claims] and asserted official authority.'" *Id.* (citing *Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, 865 F.3d 181, 186 (4th Cir. 2017)). "The right of removal is absolute for conduct performed under the color of federal office." *Id.* (citing *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981)).

## IV.  THE PREP ACT

The PREP Act was enacted by Congress in 2005.  The PREP Act gives the Secretary of Health and Human Services authority to conduct and support research and development activities regarding countermeasures, in consultation with the Director of the National Institutes of Health. 42 U.S.C. § 247d-6a (a)(1).  A "qualified countermeasure" means a drug, biological product, or device that the Secretary deems to be a priority:

> (i) to diagnose, mitigate, prevent, or treat harm from any biological agent (including organisms that cause an infectious disease) or toxin, chemical, radiological, or nuclear agent that may cause a public health emergency affecting national security;

> (ii) to diagnose, mitigate, prevent, or treat harm from a condition that may result in adverse health consequences or death and may be caused by administering a drug, biological product, or device that is used as described in this subparagraph; or
>
> (iii) is a product or technology intended to enhance the use or effect of a drug, biological product, or device described in clause (i) or (ii).

*Id.* § 247d-6a (a)(1)(A).

The PREP Act allows for expedited funding, procurement, peer review, and any such matter that can speed up production of a qualified countermeasure during a declared state of emergency. The Secretary is authorized to issue a declaration of a public health emergency through publication in the Federal Register, "recommending, under conditions as the Secretary may specify, the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures," *id.* at § 247d-6d(b)(1), and stating "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." *Id.* § 247d-6d(a)(1). "The immunity under paragraph (1) applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure." *Id.* § 247d-6d(a)(2)(B). "Covered countermeasure" is defined as

> (A) a qualified pandemic or epidemic product (as defined in paragraph (7));
>
> (B) a security countermeasure (as defined in section 247d-6b(c)(1)(B) of this title);
>
> (C) a drug (as such term is defined in section 201(g)(1) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 321(g)(1)), biological product (as such term is defined

9

>by section 262(i) of this title), or device (as such term is defined by section 201(h) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. 321(h)) that is authorized for emergency use in accordance with section 564, 564A, or 564B of the Federal Food, Drug, and Cosmetic Act; or
>
>(D) a respiratory protective device that is approved by the National Institute for Occupational Safety and Health under part 84 of title 42, Code of Federal Regulations (or any successor regulations), and that the Secretary determines to be a priority for use during a public health emergency declared under section 247d of this title.

*Id.* § 247d-6d(i)(1).

>The term "covered person,"
>
>when used with respect to the administration or use of a countermeasure means –
>
>(A) the United States; or
>
>(B) a person or entity that is–
>
>(i) a manufacturer of such countermeasure;
>(ii) a distributor of such countermeasure;
>(iii) a program planner of such countermeasure;
>(iv) a qualified person who prescribed, administered, or dispensed such countermeasure; or
>(v) an official, agent, or employee of a person or entity described in clause (i), (ii), (iii), or (iv).

*Id.* § 247d-6d(i)(2).

>As relevant here, a "program planner" under (iii) above
>
>means a State or local government, including an Indian tribe, a person employed by the State or local government, or other person who supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with a declaration under subsection (b).

*Id.* § 247d-6d(i)(6).

> A "qualified person" under (iv),
>
> when used with respect to the administration or use of a covered countermeasure, means--
>
> (A) a licensed health professional or other individual who is authorized to prescribe, administer, or dispense such countermeasures under the law of the State in which the countermeasure was prescribed, administered, or dispensed; or
>
> (B) a person within a category of persons so identified in a declaration by the Secretary under subsection (b).

§ 247d-6d(i)(8).

The sole exception to immunity for covered persons is an exclusive federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct by the covered person. § 247d-6d(d)(1). Any such action must be filed and maintained in the United States District Court for the District of Columbia. *Id.* § 247d-6d(e)(1).

On January 31, 2020, the Secretary issued a Determination that a Public Health Emergency Exists, and had existed since January 27, 2020, nationwide. *See* https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx. On March 10, 2020, the Secretary issued a Declaration under the PREP Act effective February 4, 2020. *Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19*, 85 Fed. Reg. 15198-01, 2020 WL 1245193 (Mar. 17, 2020).

## V.  DISCUSSION

Defendants contend that, beginning in February 2020, they started receiving as series of "explicit, mandatory" instruction from regulatory entities specifically relating to COVID-19. ECF No. 36, 3. For example, on February 1, 2020, the Centers for Disease Control and Prevention ("CDC") issued additional criteria for screening of patients/residents for COVID-19 in healthcare

11

facilities. On March 4, 2020, the CDC instructed on managing the spread of COVID-19 in nursing homes, focusing on visitor access, use and maintenance of PPE, monitoring/screening staff, and acceptance/transfer of COVID-19 residents. On March 13, 2020, the Centers for Medicare and Medicaid services ("CMS") issued revisions for nursing homes, restricting "visitation of all visitors and non-essential health care personnel, except for certain compassionate care situations, such as an end-of-life situation." ECF No. 36, 4. Defendants contend the direction and regulation of long-term care facilities, skilled nursing facilities, and nursing homes by the government concerning COVID-19 "permeated virtually every aspect of the day-to-day operations of these facilities." *Id.* at 7. According to Defendants, "Defendants, like many others in their situation, worked tirelessly to assist and carry out the directives, orders, and instructions of the Federal Government and Federal officers as a means of maintaining the critical infrastructure of the United States." *Id.*; *see* ECF No. 36, nn. 4-25 for a listing of directives.

Turning to the elements federal officer jurisdiction, Defendants submit the following:

1. <u>Defendants comprise persons acting under a federal officer's direction</u>. Defendants claim they were involved in an effort to assist, or help carry out, the duties or tasks of the federal superior. ECF No. 36, 8. Defendants note the numerous directives and specific recommendations issued by the CDC and CMS. Defendants further assert that on March 28, 2020, the Department of Homeland Security, Cybersecurity & Infrastructure Security Agency recognized healthcare providers as part of the "critical infrastructure" of the United States, obligating Defendants to aid the Federal Government in preventing the spread of COVID-19. ECF No. 36, 4. According to Defendants, this designation allowed the federal government "to enlist the aid of these private persons and entities to ensure continued operation of the healthcare infrastructure that is 'so vital to the United States that

12

[its] incapacity or destruction . . . would have a debilitating impact on security, national economic security, national public health or safety, or any combination of those matters.'" *Id.* at 5 (quoting 41 U.S.C. § 5195c(e)). Defendants note the CMS recognized long-term care facilities especially as being subjected to "unprecedented targeted direction." *Id.* Defendants assert detailed regulation compelling specific conduct satisfies the "acting under" element. *Id.* at 9 (citing *Winters v. Diamond Shamrick Chem. Co.*, 149 F.3d 387 (5th Cir. 1998)).

Defendants argue they qualify as "covered persons" because they are "program planners"; that is, the facility has been used to administer, distribute, dispense, or used covered countermeasures in accordance with the PREP Act. ECF No. 36, 10. Defendants further claim they are "qualified persons" by virtue of being a licensed health facility and its employees were and are licensed health professionals who are authorized under South Carolina law or another authority having jurisdiction – such as the CDC – to administer or dispense covered countermeasures. Defendants claim they assisted the federal government fulfill basic governmental tasks the federal government could not perform by itself by and through directives of CMS and the CDC. Defendants contend the involvement of the federal government was unprecedented and went far beyond mere compliance with routine regulatory actions. Defendants submit entitlement to federal officer jurisdiction is limited to the uniqueness of the COVID-19 pandemic, the federal government's response and directives, the designation of Defendants as part of the critical infrastructure, and Defendants' actions in accordance with federal instruction.

2.   <u>Defendants have raised a colorable federal defense via the PREP Act</u>.  Defendants point out the government's use of broad language respecting the applicability of the PREP Act to "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or

use by an individual of a covered countermeasure." ECF No. 36, 14. Defendants note they do not need to prevail on the defense, just show it is colorable. Defendants state the "alleged wrongful acts" even if unsuccessful, were taken in an effort to comply with federal directives because Defendants were part of the "critical infrastructure" that mandated Defendants to carry out the "vital operations and duties of the federal government." ECF No. 36, 15.

3.     <u>Defendants have shown a causal connection between the federal officers' directions and Plaintiff's claims</u>. Defendants argue their alleged deficiencies in responding to the COVID-19 pandemic; their allegedly inappropriate actions concerning use, allocation, and administration of PPE; and their allegedly poor infection control procedures were taken while "acting under" and "for or relating to" the directives and orders of federal officers.

The court disagrees.

In *Watson v. Phillip Morris Cos.*, 551 U.S. 142 (2007), the plaintiffs filed an action in the Eastern District of Arkansas claiming the defendant cigarette manufacturer violated state laws prohibiting unfair and deceptive practices, i.e., advertising cigarettes as "light" when the cigarettes delivered greater amounts of tar and nicotine than the "light" adjective would lead smokers to believe. The defendants removed the case under federal officer jurisdiction. The district court and the Court of Appeals for the Eighth Circuit agreed the defendant was entitled to federal officer jurisdiction because of the FTC's detailed supervision of the cigarette testing process.

The Court observed a private person acts as a federal officer if he "lawfully assists" the federal officer in the performance of his official duty." *Id.* at 151 (quoting *Davis v. South Carolina*, 107 U.S. 597, 600 1883)). The private party must be "authorized to act with or for [federal officers or agents] in affirmatively executing duties under . . . federal law." *Id.* (quoting *City of Greenwood*

14

*v. Peacock*, 384 U.S. 808, 824 (1966)). The Court found:

> In our view, the help or assistance necessary to bring a private person within the scope of the statute does not include simply complying with the law. We recognize that sometimes an English speaker might say that one who complies with the law "helps" or "assists" governmental law enforcement. Taxpayers who fill out complex federal tax forms, airline passengers who obey federal regulations prohibiting smoking, for that matter well-behaved federal prisoners, all "help" or "assist" federal law enforcement authorities in some sense of those words. But that is not the sense of "help" or "assist" that can bring a private action within the scope of this statute. That is in part a matter of language. One would usually describe the behavior of the taxpayers, airline passengers, and prisoners we have described as compliance with the law (or acquiescence to an order), not as "acting under" a federal official who is giving an order or enforcing the law.

*Watson*, 551 U.S. at 152.[3]

Rather, some special relationship must exist wherein Congress or a federal agency explicitly delegates legal authority to a private actor, or there exists a contract, payment, employer/employee relationship, or principal/agent arrangement.

Plaintiff included in his supplemental brief a list of twenty-five cases wherein arguments like those made by Defendants have been rejected. ECF No. 25. n.1. Since that time, additional courts have come to the same conclusion: *Cagle v. NHC Healthcare-Maryland Heights, LLC*, No. 4:21CV1431 RLW, 2022 WL 2833986 (E.D. Mo. July 20, 2022); *Crisel v. Stearns Nursing and Rehabilitation Center*, Case No. 22-cv-685-DWD, 2022 WL 2734258 (S.D. Ill. June 24, 2022);

---

[2]Defendants attempt to distinguish Watson by arguing the regulations were unprecedented and directed all their conduct. This is incorrect. The *Watson* Court stated: "The upshot is that a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone. A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official." And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. A contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries." *Watson*, 551 U.S. at 153.

*Champion v. Billings Skilled Nursing Facility, LLC*, 591 F. Supp. 3d 892 (D. Mont. 2022); *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580 (5th Cir. 2022); *Sorace v. Orinda Care Center, LLC*, Case No. 21-cv-05714-EMC, 2021 WL 5205603 (N.D. Cal. November 9, 2021); *Hackey v. Tower Hill Rehabilitation, LLC*, 569 F. Supp. 3d 740 (2021); *Maglioli v. Alliance HC Holdings LLC*, 16 F.4th 393 (3d Cir. 2021); *Martin v. Petersen Health Operations, LLC*, Case No. 1:20-cv-1449, 2021 WL 4313604 (C.D. Ill. Sep. 22, 2021); *Lollie v. Colonnades Health Care Center Ltd. Co.*, Civil Action H-21-1812, 2021 WL 4155905 (S.D. Tex. Sep. 13, 2021). The court joins these courts in finding mere compliance with federal law is insufficient to confer federal officer jurisdiction.

## VII. CONCLUSION

The court concludes it lacks subject matter jurisdiction based on federal officer jurisdiction. Defendants are directed to file a responsive pleading within fourteen days of the date of entry of this order.

**IT IS SO ORDERED**.

s/ Donald C. Coggins, Jr.
United States District Judge

Spartanburg, South Carolina

March 6, 2023